Industries v. Unified Government of Wyandotte County. It is docket 22-3147. Counsel, we are ready to hear your argument when you are ready to give it. May it please the Court, my name is Jason Hands and I represent the appellant, Deffenbaugh Industries, and I would like to reserve five minutes for rebuttal. The first issue, this issue on appeal is whether, given only resident complaints trigger a penalty under the contracted issue, and the Unified Government indisputably committed a default by penalizing Deffenbaugh based on reports from the Unified Government staff, whether a reasonable jury could find that the Unified Government had notice of the basis of its defaults and the opportunity to cure. Counsel, you never suggested that Section 7.02b was a penalty provision, right, in your many, many years of contract negotiations? There was no evidence in the record that anyone on behalf of my client had ever done anything other than agree it was a penalty in the contract. He used the term penalty in 7.02b. I guess to be more precise about my question, the argument that you're making now was never at issue, the summary judgment record doesn't suggest it was at issue in the contract negotiations. Is that fair? Right. There was nothing in the record about the contract negotiations regarding the parties back and forth on whether to use the term penalty or liquidated damages in 7.02b. That's correct. Well, let me ask it a little differently. When's the first time that your client asserted that it was a penalty? The first time that we ever brought it, you know, made a claim in court or legally, I guess, in a court was this case, right? So, the parties had always agreed it was a penalty and that's what the provision says. It says, shall be penalized. And so, but the first time I've asked it. You didn't agree to a penalty provision, right? Your client would not have agreed to a penalty. I believe that the contract, that's what happened, that they did agree to a penalty. But the word penalty isn't dispositive, right? That's a circumstance. Under Kansas law, it is controlling unless there are other circumstances to show that it shouldn't be controlling, right? And so, you really need one more step. You need to say the contract said penalty and here's why it is a penalty. And you never mentioned until this lawsuit why it was a penalty to the other party, to UG, right? Yeah, there was no evidence. There was no evidence in the records of any discussion in that regard. Right. And represented by counsel, 20 plus years, that didn't happen. Shouldn't we take that to mean something? Yeah. Well, there was also evidence in the record that I believe that there had only been one prior instance where there had been discussions of imposing a penalty. So, it only come up once ever. Right. I'm sorry to interrupt you. I was derelict in my duty. We have Judge Murphy appearing by Zoom, as you can see on the screen. So, he may chime in with questions at any time and that's where the voice is coming from. Right. Thank you. To sort of go back to the termination issue that I was talking about, the district court ruled on summary judgment that no reasonable jury could find that the unified government had effective notice under the circumstances. Counsel, did the contract give UG a right to cure? The contract did provide that the contract would not be terminated, well, it would be terminated on 30 days notice than the UG would have, unless the UG cured. So, yes. So, yes, they had a right to cure. Correct. So, why was it incorrect for the district court to understand the requirement for you when you're giving notice to make it clear how they could cure? And I think in that regard that the evidence showed that the unified government was notified. As the district court's opinion goes through, the district court acknowledged the letter that had been sent by Deffenbaugh and that Deffenbaugh had objected to the penalties being based on reports other than customer calls through the 311 system. But the district court discounted that evidence and they imported that letter. And the district court said the letter didn't advance the particular contract constructions that were at issue in the lawsuit. And that's where we submit the district court error. The letter was written by a non-lawyer and certainly was not termed in terms of a contract construction, but the letter did directly object to imposing penalties on bases other than the customer complaints being made through the 311 system. And that's important because, as we noted, the contract provides that customer is defined as an occupant of a residential unit. It's not the unified government or its staff. How is stating the various theories of breach in your letter the same thing as providing adequate notice for you to cure? So if we say we object to you penalizing us on anything other than customer complaints through the 311 system, that provides them notice we should rescind the imposition of those penalties that aren't based on calls by customers. And so at the time, the only month at issue was May of 2019. And I think it provided a clear notice to the unified government, hey, the penalties based upon staff reports of the unified government is not a proper basis. The only basis for penalties should be the customer complaints. Are you relying on the August 2019 notice of appeal? As far as notice of default, are you relying exclusively on the February 2020 notice? No, we are also relying on both, right? And so the appeal letter provided sort of the background to it. And so the UG imposed the penalties in June. There's the July appeal letter, and so there's a provision in the contract that says you can appeal the penalties to the county administrator. That was rescinded a month or so later. The appeal was withdrawn. But importantly, in withdrawing the appeal, we told the unified government we're doing so to, quote, consider and pursue alternative legal remedies for the UG's improper penalties. The withdrawal letter made clear that the issue was still alive, right? But that it was going to be resolved another way. So we shouldn't be thinking anything other than the fact that it was rescinded. The fact that it was rescinded still supports your position? Correct. Yeah, it does not undermine our position. The withdrawal letter notified the UG, hey, we still think these are improper, but we're not going to do the penalty process, right? So it's clear that the, I don't know that it's in the briefs here, but the person that imposed the penalty was the same person that was going to do the appeal, which was the county administrator. And so that's why the idea that we would appeal those to the person that imposed them was sort of the basis for withdrawing at that time. Ultimately, we believe that notice issue, whether it was sufficient, should be resolved by a jury. The evidence and inferences to be drawn from the UG's letter imposing the penalties, Duffenbaugh's appeal letter, the withdrawal of the appeal, and then the communications leading up to the February report from the UG's consultant, and then immediately thereafter Duffenbaugh's notice of termination. We believe all those circumstances could lead to a reasonable fact finder to conclude the UG knew or should have known that Duffenbaugh was objecting and should have rescinded the penalties that were not based upon customer complaints. I do want to mention real quick, we talked about the penalty provision at the outset. I think it's really important here that the parties agreed in the contract to provide for a penalty in Section 7.02B, but in a different provision of the contract agreed that, and not at issue here, I believe a separate thing, agreed that liquidated damages would be imposed for certain things. So just to clarify, you're talking about 3.07 and 7.02, right? Correct. 3.07, not at issue in the lawsuit, but is evidence of what the parties had done at the time of contracting, right? In 3.07 they agreed under these circumstances that there would be liquidated damages. But doesn't 3.07 essentially do the same work as 7.02? I mean, how is, if we're leaving aside, putting aside the language, one, I agree, one says liquidated and one says penalty, aren't they functionally equivalent in terms of the role that they play in the contract itself? They certainly have a, they both impose a monetary amount for a, I mean they're different in a sense, but they do both impose a monetary amount. So how are they different other than they have different names? I mean, I think that's important. The reason it's important is in the same contract, in one provision they used liquidated damages, in the other provision they used the penalty. Again, we don't have any evidence of the record of why they did that, right? We don't know what the negotiations are or why they had those there, but they used two different terms in those two different sections. If you're reserving time, now's the time. I would. Thank you, Your Honor. Before you do so, this is Judge Murphy. Before you do so, let me ask you about the nature of your lawsuit. Just holistically, basically your lawsuit is a breach of contract claim, correct? Well, there were three different claims. I understand the three claims. Your lawsuit, in essence, as a whole, is a breach of contract claim, correct? Well, certainly count two. Yes or no, is your lawsuit, in essence, a breach of contract? Is it a cause of action, a breach of contract? I would have to say no. I mean, that's not the only claim. The whole thing is not solely a breach of contract. Well, isn't your seeking a declaration of termination a remedy or a breach of contract, and you must show a breach of contract before you can get that? No, because there's a specific provision of the contract that provides for the termination, right? And that requires an establishment of a breach of that contract in order to terminate under that provision, correct? Okay, all right. But it requires establishment of a breach of contract before we can terminate, correct? It doesn't. Yep, it doesn't. I understand why this is so hard. In order to get a contract, clearly, you have to show a breach of the contract. Yeah, to terminate the contract, we had to show what was required by the contract provided for termination, right? And so the common law of breach of contract might impose other requirements, such as a materiality, a copy provision, or that the breach may be material. But here, the contract set forth what would be an event of default, and then if there was an event of default, that triggered the termination. Well, tell me why, under 54B, this should not be deemed a cause of action for breach of contract, for which you seek two remedies. One remedy to terminate, and one remedy for damages. Right, because the Count 3, we did a sort of breach of contract action, or breach of contract claim, and that is still pending before the district court. But the termination provision really arises out of an operation of the provision of the contract. The contract for which you are seeking damages under your Count 3, the same contract, right? That's correct. One of two contracts. Correct, one contract. Why, then, should we view this as multiple claims? Because, as I understand most of the law, in defining the word claim, it's deemed to be a cause of action. So you have a cause of action for breach of contract, and you're seeking, under Count 1, termination, and under Count 3, damages. Why is it an inappropriate view or approach? Right, because the claims are separable. One deals with a breach of contract and a recovery of damages. That's the claim still pending before the district court. The other claim that we're here on appeal on involves whether the contract right of termination was properly exercised pursuant to the provisions of the contract. That's how they're separable. I understand your position. Thank you. May it please the Court, Greg Musil on behalf of the Unified Government of Wyandotte County and Kansas City, Kansas, which represents about 150,000 Kansas citizens in an effort to provide government services. I was going to start with the unconscionability part, but I think I'll start with the notice. Because what Mr. Hans said in his argument is exactly the point that the district court made and that we have argued. He said, if we had told them that our complaint was unified government staff making reports of missed collections, they would have, and they could have, rescinded those damages and they would have cured. That's what Mr. Hans told you. They didn't tell us that because we could have cured. We would have had what Judge Robinson said in the Valley View Bank case, a meaningful opportunity to cure because the facts of where the breach allegedly occurred would have been known to the unified government. You've reviewed, obviously, the record. You have a great sense of the February 21st letter, which set out five generalized legal theories. Never mentioned 702B. Never mentioned unified government staff making reports. And in response to that, unified government, through my law firm, said, please tell us what the facts are that you think we are in breach. Tell us what we need to do to cure. And in response, we got a letter in March that said, no, you're terminated. And two months later, we had a lawsuit. We've argued in our brief about waiver of the notice of the reference to the June or July 2019. I'm not sure you're on. You said August. Mr. Hans said July. I thought it was late June. I know that the withholding letter was sent on June 25th. I would urge you and your clerks to review the correspondence from June 25th through August 16th when the appeal was rescinded and withdrawn in favor of amorphous generalized legal theory alternatives. Because none of those mentioned 7.02B. None of them mentioned unified government staff reports. There is nothing there. Is the way in which notice of termination must be provided something that should be set out in the contract? In other words, should the contract itself say, if you're going to terminate, if you're going to give notice of termination, here's how you do it. It would be better, I think, as we all learn on contracts over time. The case that we have that was originally a case decided in the briefs talked about you must specify the default. You must specify the breach. This contract did not. So because the contract does not tell your friend on the other side how to provide the notice, what are the applicable legal principles that we should be looking to to rule in your favor that the notice is deficient under Kansas law if the contract doesn't tell us? Common sense that says if you're going to tell me something is wrong and you're going to terminate a $150 million 20-year contract, you need to tell me how and why, not just that I think you breached. Anything other than common sense? The Kansas Valley View Bank case, which cited to Gallagher versus Borden in Ohio, which set out very concisely what ought to be done under normal circumstances if you're going to have a meaningful opportunity to cure. We know that Defenbaugh doing business as waste management didn't want a meaningful opportunity to cure. The record shows they had been planning, scheming since August of 2019 to let the penalties pile up and then use that as a reason to breach and terminate. They don't like this contract. They don't want the unified government to get the benefit of its bargain through 2032. That's why I think when you look behind that, you notice that there is not only a common sense reason why we didn't know what to cure. The pivotal case in Colorado utilized the Colorado Implied Covenant of Good Faith and Fair Dealing. That is available in any Kansas contract as well. It may be another basis on which to find that you need to tell people how and why the breach occurred so they can investigate and determine what to do, or they can negotiate a settlement, which is another favorite of the law, is to find a way to resolve disputes so we don't end up in Denver, Colorado on May 16th. So I think the notice provision is pretty clear. There was never any indication. And I'll go back. In our response to the demand letter or default letter in February of 2021, we included our detailed documentation of the January 2020 misses that we were withholding, just as we had provided them in the summer of 2019 with the detailed documentation of the May misses. And all of those said expressly that one of the ways we were notifying them was UG staff emails to waste management. We had told them exactly how we were doing it. It's exactly why we're here today, is they're saying that's wrong and that's a breach of contract. All they had to do was say, point number three in your summary pages of every month's documentation breaches the contract. It's that simple. I'd like to move on to the unconscionability, if that's okay with the panel. I have one other question. Yes, ma'am. If we're invoking principles of common sense to discern what the notice should have said, why wouldn't common sense counsel in favor of the appellant here that the appeal letter, even though it was rescinded, you knew what it was about. You knew what the issue was. I'd urge the court again to look at that appeal letter. What it says was you must report all misses through 311. An issue the district court left up was a question of fact as to whether or not that was the exclusive way to report them. But all the appeal letter said was you must report through 311. It did not say it must be a customer to report through 311. Mr. Hans suggested that in his argument. Go back and read the letter. It does not. It doesn't differentiate. It says any complaint must come through 311. If at that time they had said, and you can't do staff complaints, we would have been on notice. And if they had referenced the June letter in their February letter, that would have been another simple thing to do, as the Pivotal case mentioned. That you didn't even reference the previous letter you're now relying on. And we're supposed to guess that an eight-month-old letter that you withdrew and rescinded in favor of other generalized legal alternatives is now alive and well, resurrected for us to respond to. So your position is it doesn't matter that it was rescinded. It never gave notice of the claimant issue. Correct. With respect to unconscionability, I go back to the first principles that the law tries to establish that we then tweak and modify and adjust with respect to specific fact situations. The Kansas Supreme Court and Kansas courts have for decades said that competent parties have the right to contract. They have the right to make their own terms, provided there's no fraud or duress or deception or, in the case of unconscionability, certain circumstances that have been considered. Those circumstances are very limited by Kansas courts. And even though Waste Management does not want us to talk about the Willie v. Southwestern Bell case, it has been cited in virtually every context you can think of under Kansas law. Aren't there two lines of authority on that, though? There's the Beck line and then there's the Willie, and you don't see a lot of discussion between the two lines about each other. You don't, Your Honor, although a lot of cases seem to address both of them as alternatives. But you see Willie in phone advertising contracts, farm equipment leases, wrongful termination, spot delivery of automobiles. It is the Supreme Court's guidance, which has been clarified, if you will, through Beck v. Medley and Carruthers to the other two provisions. But the other two provisions don't lead to any different result. Is the amount reasonable in light of the overall contract and the circumstances of its execution? And are the actual damages not easily or readily determined? One thing that I found intellectually interesting here, and I don't know if the Court will, is this notion that you have to have a pre-contract determination or estimate of damages. And yet all of the public service contract cases, which is what we have here, demonstrate that you can't estimate without speculation, conjecture, or remoteness what the damage is to the public good, to the public welfare, to the public health in advance. And it's in their briefs while I address it here. Does that mean there's no limit? No, I don't think it means there's no limit. I think you take into account the whole of the contract, the circumstances under which it was entered into, and the generalized notion that we know the public is hurt on a prospective basis only, since Kansas only allows a prospective view of liquidated damages, to try to estimate what might happen in the future. My question here is how would the unified government have estimated, would they have assumed hundreds and hundreds and hundreds of misses over months and months and months in multiple neighborhoods in trying to set the number before the contract was executed? First in 1993, renegotiated in 2012 and raised from $100 to $200, ratified by waste management when it bought Defenbaugh in 2015 and conducted due diligence on its contracts. How would you have done that with something other than this type of estimate of the damage to the general public? If you look at the entirety of the contract, the $500,000 plus that was withheld in the first eight years of the contract, it's about 5% of the value of one year of the contract. The contract for 20 years is worth about $150 million. And as was noted I think in the pivotal case, when the default notice is going to result in a very severe impact, i.e. termination of a contract, both the notice becomes important and the size of the contract becomes important in the unconscionability argument. This is not a simple issue. It's akin to holding a public service, a public government hostage because it takes a long time to replace a trash contractor. And we know that there is a damage to the public good when trash leaves on that stays on the curb, on an entire block for days or weeks. And so $200 per pickup, they would like to measure it versus one house per month and say that that's only $10 or $11. So therefore, I guess we could charge $10 or $11 and that would be fine. But when it's a neighborhood and when the trash is strewn and when it affects the social contract of those entities and when they lose faith in their government to enforce something as simple as pick up my trash, pick up my recycling, pick up my mattresses, my bulk items, which is another thing Waste Management just doesn't like about this contract, it becomes an issue difficult for the government to apply. I think the district court got it right on that one. It talked about it and it cited cases outside of Kansas for the understanding that public service contracts are important. And from 1902 in the Brooks case, which was cited by the 8th Circuit, which returned into the 10th Circuit, to 1934 in the Gregory case, I think it was, to 1941, to 1981 in DeWerff, and to 2009 in Carruthers, all of those Kansas cases say public service contracts are different. They are entitled to different considerations and given serious weight. How should we reconcile the fact that you do use different words in the contract? I think the Supreme Court has told us how to do that. It says those words are often used interchangeably. So this was just a drafting mistake? You assume that the parties to the contract are intentional about their word choices. I think, Your Honor, you brought it up in the first argument. Sophisticated parties, both represented by counsel, would have inserted in 1993 a provision they knew was unenforceable under Kansas law, and everybody lived with it for 27 years. And even in 2017, the retrospective analysis that Waste Management would like us to have in 2017, nobody said it's unenforceable. Nobody said there's a problem with this provision. So we can look to the history, the contracting history of the parties, in interpreting the language of the contract? I think you can look at the practice of the parties. I think you can look, as you indicated in the appellant's argument, to what is the effect. The effect of both of those provisions is to try to estimate what happens to this community of 150,000 people if you don't perform, and the government has to step in and perform, or has to try to otherwise go to court. What I look at is what happens if this is unenforceable? The unified government has to then file a lawsuit over every miss or a collection of misses and provide proof and provide damages and then try to estimate what the public damage is and what will be the defense of Waste Management. Well, that's remote and speculative. Those aren't reasonable damages. I mean, one of the cases, and I think it was Kansas City versus Industrial Gas indicated, over time we have learned that judges and juries are no better at estimating public damages than the parties themselves when the parties to the contract decide on a certain thing. And they decided in 1993, and they decided in 2012, and Waste Management decided again in 2015. And the first notice we ever saw that they complained about 7.02b was in May of 2021 when this lawsuit was filed. Counsel? Yes, sir. Counsel, in the district court, you opposed the declaratory judgment seeking termination on two bases, right? Inadequate notice, and in fact, there was no breach. Is that correct? That's right, Your Honor. All right. So in doing so, you acknowledge that a premise of the declaratory judgment relief was to show a breach of contract, correct? Yes. I think I agree with you, Your Honor. This is a breach of contract case at base. All right. And you still hold out hope in the ultimate trial that a fact finder will determine that you did not breach the contract, correct? Well, the trial would be limited to those claims that are made by customers, whether through 311 or otherwise. Basically, you open trial two things. One, that it's established that Heffenbach breached and established that Wyandotte County did not breach. Is that correct? Those are your two efforts at trial. At this point, the determination that staff reported complaints constituted a breach has been determined by the district court and not appealed. So at trial, we would be determining all of the other missed collections and what the damages were for those. Right. But for you to prevail and continue to get at least some of the offsets that you asserted, you have to show that you did not breach the contract, correct? Correct. In regard to whatever complaints will qualify for you to get these credits? I think the trial would be a question in our counterclaims to count three as to whether we can demonstrate that the misses that were reported through 311 by residents, not by UG staff, because that issue has been resolved. I'm sorry if I'm not understanding that. But however you cut it, the trial is going to be about whether there was a breach of contract, ultimately, by one party or the other. That will certainly be part of it. And if so, the measure of damages, right? Yes, Your Honor. Thank you. May I quickly conclude, Your Honor? Please. I walked into this courtroom today and I noticed that it expressly instructs us that reason is the soul of all law. We believe the district court applied that reason to this case based on the authority that's available in Kansas. And we would ask you to affirm the district court on all points. Thank you. Thank you. Mr. Haynes, we will give you two minutes for rebuttal, although your time had expired. So I'm going to hold you to two minutes. Thank you, Your Honor. Counsel mentioned that his view of the evidence is that Waste Management, or excuse me, Duffenbaugh was planning and scheming to let the penalties build up. And I think that's certainly an influence from the evidence. There's evidence in the record. There is evidence in the record. But there's also evidence in the record that we were waiting for the report of the Unified Government's consultant, who was going to issue a report on modernization and different techniques. And that's why the notice of termination did not come out until it came out with, I believe, within a week after that report was issued. Counsel urged the court to look at the June appeal letter. I believe it's dated in late June and was emailed on July 1st. I do as well. I believe it is clear. The letter clearly says we object to penalties being based on anything other than customer complaints being made through the 311. And the final thing I want to say is that we believe the district court also improperly placed the burden upon Westar, or excuse me, upon Duffenbaugh to prove that that which is called a penalty in the contract was not a penalty. And certainly Kansas law requires the party challenging liquidated damages provision that demonstrates not liquidated damages. But here, as we're all aware, the 7.02b is called a penalty. So with that, any more questions from the court? Anything, Judge Murphy? I think not. Thank you. Thank you, Your Honor. Thank you both for your arguments. The case is submitted. Counsel are excused.